ED. S. HUGHES CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 6748, 14120. Promulgated April 21, 1927.

1. Debts ascertained to have been worthless after careful consideration of data respecting the debtors, *held* deductible in the amounts claimed, as small recoveries subsequently made thereon and the inability to give minute factual details as to every debtor does not justify the disallowance of the deductions taken.

2. A syndicate to which petitioner made advances, rather than petitioner, was dealing in oil leases and royalty interests and the profits therefrom should be eliminated from petitioner's income.

3. In the absence of evidence showing an incomplete inventory of merchandise, taken over in a consolidation, to be a proper basis for adjustment in income to allow cost of such goods, the Commissioner's denial of the claimed adjustment is affirmed.

*Max L. Pearl, C. P. A.*, for the petitioner.
*W. F. Gibbs, Esq.*, for the respondent.

This proceeding results from the determination by respondent of a deficiency in income and profits taxes for the fiscal year ended April 30, 1920, in the sum of $7,196.22, a deficiency in income tax for the fiscal year ended April 30, 1923, in the sum of $85.61, and a deficiency in tax for the fiscal year ended April 30, 1924, in the sum of $1,498.18. By appropriate motion, the proceedings for all years were consolidated for hearing and decision. Three principal errors are assigned in the determination of the respondent: (1) Bad debts in the amount of $9,014.98 were disallowed as a deduction for the fiscal year ended April 30, 1920; (2) petitioner has been charged with income from the sale of oil leases or royalties when the petitioner derived no income whatsoever therefrom; (3) petitioner has not been given credit in determining net income for the fiscal years ending April 30, 1923, and April 30, 1924, for the cost of merchandise sold.

#### FINDINGS OF FACT.

Petitioner is a corporation organized in May, 1905, under the laws of the State of Texas, and having its principal offices, warehouses and salesrooms in Abilene, Tex. It is engaged in the wholesale and retail hardware business, sale of farming implements, and automobile accessories. In the tax return for the fiscal year ended April 30, 1920, the petitioner claimed as a deduction for debts ascertained to be worthless and charged off within the taxable year, the sum of $22,418.84 and the respondent disallowed the amount of $9,014.98 as a deduction of the sum claimed. Prior to the close of the fiscal

year ended April 30, 1920, and before the books were closed for that year, the credit department of petitioner caused a minute examination to be made of all of its accounts, letters were written to debtors who were in arrears, collectors were sent to interview those owing sums to petitioner, careful consideration was given to the property holdings of each person owing debts, and from this detailed information and data, the officers of petitioner determined debts in the amount of $22,418.84 to be worthless and charged them off on its books. There have been slight recoveries in years subsequent to fiscal year ending April 30, 1920, which petitioner has reported as income.

Ed. S. Hughes, president of petitioner, began business in Abilene, Tex., in 1882, and has long had associated with him certain individuals, who, by their industry, have come to have a profit-sharing agreement with him resulting in the ownership of some of the stock of petitioner. In 1918, speculation was rife in dealing in oil leases in the vicinity of Abilene, and those whom Hughes had associated with him became dissatisfied with the business of petitioner and desired to enter this field for themselves. Hughes, in order to sustain the morale of those associated with him in the business of petitioner, agreed, in 1918, with Robin Jones and A. S. Payton, to purchase for their own account, certain oil leases and royalty rights. An oral agreement was entered into between Hughes, Jones, and Payton for the formation of an oil syndicate. The three parties thereto were to have varying percentages of ownership in the oil leases and royalties to be purchased and sold. It was first suggested that Ed. S. Hughes supply the money with which to carry on the operations of the syndicate and advance the sums necessary to Jones and Payton for their shares. The petitioner had a comfortable bank balance and it was decided to obtain loans from it with which to carry on the operations of the syndicate, and, accordingly, as funds were needed for the purchase of leases or royalties, the petitioner would loan the funds to the syndicate for such purpose. The loans were charged on the books of petitioner to the account of the syndicate and carried as accounts receivable. When leases or interest in royalties were sold by the syndicate, the sums received were applied as a credit to the account of Hughes, Jones and Payton. When petitioner consolidated with two other corporations, in the year 1921, the account of Hughes, Jones and Payton was balanced and the amount owed the petitioner determined and paid.

In the summer of 1921, petitioner was consolidated with the Duggan-Brown Overland Co. and the Over Hardware Co. The new concern was to be known as the Ed. S. Hughes Co. The consolidation was entered into to effect economies in the management and

operation of the three businesses, which were engaged, to some extent, in the sale of hardware and implements. But scant attention was paid to the formalities incident to such consolidation. The petitioner took over certain of the merchandise of the Duggan-Brown Overland Co. shortly after the consolidation, and sold the same to its customers. In April, 1926, petitioner realized that in computing its income for years subsequent to the consolidation, it had not given effect to the cost of the goods of the Duggan-Brown Overland Co., and some adjustment should have been made of the cost of its merchandise, which it had sold. An incomplete inventory was taken in 1921 or 1922, of the merchandise of the Duggan-Brown Overland Co.—we do not know the basis upon which the same was taken or whether the merchandise now on hand by petitioner includes all or any of the merchandise taken over from the predecessor corporation.

## OPINION.

MILLIKEN: The evidence and testimony in this cause is most voluminous—hundreds of pages of testimony, much of which is of no value in the determination of the questions at issue, and exhibits galore, including a revenue agent's report consisting of 96 pages and 17 exhibits.

Concerning the question of the deductibility of bad debts ascertained to be worthless and charged off within the fiscal year ended April 30, 1920, we are satisfied that petitioner exercised due diligence and good judgment in the ascertainment of the worthlessness of the debts claimed as a deduction. The petitioner had a large number of accounts on its books. It is operating in an agricultural section of the country. Accordingly, it would be unusual if petitioner had not charged off a small indebtedness here and there which time had shown to have been good when charged off. However, petitioner has dealt fairly with the Government in reporting as income the recovered amounts. There is nothing startling in the inability of the president of the petitioner to testify, five or six years after the date of the charge-off, to minute facts and details as to whether a given farmer might not have had more hogs or cows than petitioner's agent reported to it at the time the worthlessness of the debts was determined. Based upon all the facts, we are satisfied that petitioner is entitled to the full deduction claimed.

Much testimony was introduced relative to the leases and royalties which Hughes, Jones, and Payton purchased. It would extend this opinion to an uncalled for length to specify each and every transaction. The respondent considered all the transactions of the three to be the transactions of petitioner, and determined income in each year a sale was made. The evidence is clear that the three parties

secured loans from petitioner with which to carry on their operations, and the income, if any, resulting from sales of leases and royalties, was the income of the three parties and not that of the petitioner. In the redetermination of the tax due, if any, all such transactions should be excluded.

Petitioner is, no doubt, entitled to take into account, in determining its net income for any given year, the cost of goods sold, and no doubt did sell much of the merchandise of the Duggan-Brown Overland Co. which had not been taken into its inventory. The proof is lacking to support the inventories taken over from the Duggan-Brown Overland Co., and if the petitioner suffers by reason of an inflated income for years subsequent to the consolidation, it must blame itself for not taking the necessary steps to determine the correct inventory. On this issue no error by the Commissioner is found.

*Judgment will be entered on 15 days' notice, under Rule 50.*